[No. B037965. Second Dist., Div. Five. Jan. 30, 1991.]

LUCILLE J. BOSTON, Plaintiff and Appellant, v.
ELIZABETH STEPHENS NELSON et al., Defendants and
Respondents.

**COUNSEL**

Lucille J. Boston, in pro. per., for Plaintiff and Appellant.

Long & Levit, Michael L. Boli, Randall A. Miller, Haight, Brown & Bonesteel, Roy G. Weatherup, John W. Sheller and Jeffrey B. Margulies for Defendants and Respondents.

---

OPINION

LUCAS, J.*—Appeal from a judgment of dismissal after the California trial court sustained respondents' demurrer to appellant's first amended complaint. Affirmed.

FACTS

■ First, we note that "[a] general demurrer admits the proof of all material factual allegations in the complaint, and we are not concerned with the question of [appellant's] ability to prove [her] allegations." (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 151, fn. 1 [233 Cal.Rptr. 308, 729 P.2d 743].)

In December of 1979, Lucille J. Boston, a California resident, purchased a condominium in Hawaii from Elizabeth Stephens Nelson under an agreement of sale which called for payment in full by February of 1981. Boston defaulted on the note. Following a foreclosure action which involved numerous parties, claims and counterclaims, Nelson obtained a decree of foreclosure which authorized sale of the property and ordered a deficiency judgment. Sale of the property was confirmed on June 22, 1984. On November 16, 1984, following a hearing, the Hawaii court entered an order granting Nelson's motion for a deficiency judgment of $110,089.61 against Boston. Boston appealed.

Nelson retained Cadoo, Thretheway, McGinn & Serena (Cadoo), a California law firm, which, on April 30, 1986, caused the sister-state judgment to be entered in California. Boston wrote Cadoo a letter saying that the entry of judgment would cause her irreparable damage, and on June 20, 1986, moved to vacate the entry of judgment or to stay its enforcement pending the appeal in Hawaii. Hearing on the motion was set for August 13, 1986.

On August 1, 1986, the Hawaii Court of Appeals dismissed Boston's appeal after ruling that the appellate court lacked jurisdiction because

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

certain of the claims in the underlying action had not yet been adjudicated and the adjudicated claims had not been finalized under Hawaii statutes.

On August 5, 1986, Cadoo filed opposition to the motion to vacate, but did not advise the court that the Hawaii court had ruled the judgment was not final. On August 11, 1986, Boston filed a supplemental memorandum in support of her motion to which was attached a copy of the memorandum opinion of the Hawaii Court of Appeals. On the same day, Nelson filed a motion with the Hawaii Court of Appeals for reconsideration and for order for temporary remand. Subsequently, Nelson's motion was denied.

At the August 13 hearing, the trial court indicated that it intended to grant Boston's motion to vacate the entry of judgment. Cadoo told the trial court that the ruling of the Hawaii Court of Appeals was unclear and that Nelson had filed a motion for clarification with the appellate court. The trial court stayed enforcement of the sister-state judgment and continued the matter until September 11, 1986.

The Hawaii appellate court denied Nelson's motion for reconsideration on August 14, 1986. Nelson obtained an ex parte order shortening time in order to have the Hawaii trial court hear her motion for nunc pro tunc certification of the deficiency judgment. Boston opposed the order and the hearing was continued to September 23, 1986.

At the September 11 hearing, the court vacated the sister-state judgment but denied Boston's request for attorney's fees, remarking, "I don't feel that anybody here is acting improperly." The court later stated: "I am not really concerned about sanctions . . . . I am not of a feeling that the matter is so crystal clear that it warrants sanctions. ¶ To me to impose sanctions in this situation would require a good deal more hearing of evidence, and I am just not of a mind to do it. I don't have any impression at this point that someone has acted in some way that requires the imposition of sanctions."

Subsequently, Boston sued Nelson, Cadoo, and the attorneys who represent Nelson in Hawaii for fraud, intentional misrepresentation and conspiracy to interfere with prospective business advantage based on their actions in causing a nonfinal judgment to be entered in California and their making of false statements to the trial court in order to delay an order vacating the judgment.

The defendants' demurrer to the complaint was sustained with leave to amend. Boston's first amended complaint stated essentially the same causes

of action as the initial complaint and the trial court sustained defendants' demurrer to that complaint without leave to amend.

The order of dismissal states that the demurrer was granted because "defendants, as a matter of law, are absolutely privileged under California Civil Code section 47(2)."[1]

## DISCUSSION

■ Section 47 of the Civil Code reads in pertinent part: "A privileged publication or broadcast is one made—. . . [¶] 2. In any . . . judicial proceeding . . . ." "The absolute privilege attaches if all of the foregoing conditions are met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." (*McKnight* v. *Faber* (1986) 185 Cal.App.3d 639, 649 [230 Cal.Rptr. 57].)

■ In her opening brief, Boston relies on cases which hold that the privilege afforded by section 47(2) is confined to cases in which the challenged publication is made in the furtherance of the litigation and to promote the interest of justice. (*McKnight* v. *Faber, supra*, at pp. 649-650; *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 284-285 [175 Cal.Rptr. 767]; *Kinnamon* v. *Staitman & Snyder* (1977) 66 Cal.App.3d 893, 897 [136 Cal.Rptr. 321]; *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 826 [106 Cal.Rptr. 718].)

After Boston filed her opening brief, the California Supreme Court decided *Silberg* v. *Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365] disapproving of the cases cited by Boston. In *Silberg*, the Supreme Court concluded that ". . . the so-called 'interest of justice' test, [is] inconsistent with the absolute nature of the litigation privilege and its underlying policy purposes" (*Id.*, at p. 209) and that "endorsement of the 'interest of justice' requirement would be tantamount to the exclusion of *all* tortious publications from the privilege, because tortious conduct is invariably inimical to the 'interest of justice.'" (*Id.*, at p. 218.)

The plaintiff in *Silberg* alleged that the attorney who represented the plaintiff's wife in a dissolution proceeding had falsely indicated that a psy-

---

[1] All further statutory references are to the Civil Code unless otherwise indicated. For convenience, former section 47, subdivision 2 will be referred to as section 47(2).

chologist the attorney recommended for evaluation and counseling was independent and neutral when in fact the psychologist had a preexisting relationship with the attorney which led to the submission of a biased, inaccurate report. The Supreme Court held that the trial court properly sustained the attorney's demurrer to the plaintiff's intentional tort action based on the privilege prescribed by section 47(2).

■ Boston also argues that Cadoo violated the Rules of Professional Conduct by misleading the court regarding the finality of the Hawaii judgment and regarding the actions being taken to "clarify" the ruling of the Hawaii appellate court. Even were we to assume that Cadoo violated those rules by intentionally misstating the effect of the appellate court's ruling or by misleading the court as to the nature of the papers being filed to obtain relief from that ruling, the communications to the court were privileged because they were made in the furtherance of litigation. "The 'furtherance' requirement was never intended as a test of a participant's motives, morals, ethics or intent." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 220.)

■ Subsequent to the *Silberg* decision, the California Supreme Court, in *Kimmel* v. *Goland* (1990) 51 Cal.3d 202 [271 Cal.Rptr. 191, 793 P.2d 524], held that the privilege of section 47(2) did not shield an attorney and his clients who participated in an unlawful recording of telephone conversations in anticipation of litigation. The court concluded that section 47(2) "does not bar recovery for injuries from tortious *conduct* regardless of the purpose for which such conduct is undertaken." (*Id.,* at p. 205.) Boston argues that it was Cadoo's conduct, in violating the provisions of the Civil Code regarding deceit (Civ. Code, §§ 1709, 1710) and in recording a judgment that was not final, which caused her injuries and that, accordingly, section 47(2) is not applicable.

In deciding *Kimmel,* the Supreme Court stated: "Our holding is limited to the narrow facts before us involving noncommunicative acts." (51 Cal.3d at p. 205) Here, all of Cadoo's actions involved written or verbal communications with the court. Thus, as the trial court correctly determined, they come within the protection of the privilege granted by section 47(2).[2]

---

[2] Cadoo argues that the doctrine of collateral estoppel bars this action because, in denying sanctions at the hearing on the motion to vacate, the trial court determined that there had been no wrongful conduct. We need not reach the issue of whether such a determination can be used to bar subsequent litigation because the trial court stated it was not going to hear more evidence regarding sanctions. Consequently, it cannot be said that all of the issues regarding the propriety of Cadoo's conduct were necessarily decided at that hearing. (See *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].)

## DISPOSITION

The judgment is affirmed. We have considered the partial requests for sanctions. We find they are not warranted.

Turner, P. J., and Boren, J., concurred.